(December 30, 1898.)

## McGINNESS v. STANFIELD.

[55 Pac. 1020.]

WATER RIGHTS—APPROPRIATION OF WATER—JURISDICTION OF COURTS.—
In an action to settle the water rights of various parties upon a
stream, the district court, after establishing the priorities of the
various appropriators, proceeded to decree the times and the quan-
tity which each appropriator was permitted to use of such waters;
*held*, error, it not being the province of the court to dictate how
or when the right acquired by the appropriator should be exer-
cised, so long as such use was within the limits of his appropria-
tion.

VERBAL CONTRACT—ADMISSIBILITY IN EVIDENCE.—Under the statutes
of Idaho, a verbal contract for the sale or transfer of real estate
is not admissible in evidence against a stranger to such contract.

(Syllabus by the court.)

APPEAL from District Court, Elmore County.

N. M. Ruick and F. E. Ensign, for Appellants.

This suit was instituted for the purpose of establishing the
respective priorities of right to the use or the waters of Cold
Spring creek in Elmore county. The judgment should not be
upheld, inasmuch as it is in violation of the plain provisions
of the statutes of this state enacted in 1881 (Laws 11th Sess.,
p. 267), and continued in force in the Revised Statutes, sec-
tions 3155, 3159 and 3165. (*Hillman v. Hardwick*, 3 Idaho,
255, 28 Pac. 438; *Geertson v. Barrack*, 3 Idaho, 344, 29 Pac.
42; *Kirk v. Bartholomew*, 3 Idaho, 367, 29 Pac. 40.) The
verbal sale by Stover and Montgomery of the improvements on
the Cold Spring ranch, if it applied to the water right used
therewith, did not operate to transfer any right whatsoever to
the prior use of such water, but amounted to an express abandon-
ment of such water right. (Kinney on Irrigation, secs. 253,
264; *Hill v. Newman*, 5 Cal. 445, 63 Am. Dec. 140; *Smith v.
O'Hara*, 43 Cal. 371, 376; *King's River Ditch Co. v. Canal
Co.*, 60 Cal. 408; *Barkley v. Tiekele*, 2 Mont. 59.) Prior to
the enactment of any law of the territory of Idaho, Congress

had recognized the existence of rights to the use of water acquired by priority of possession, and for a time prior thereto, as well as since, water rights have been regarded as real estate or an interest in real estate to be conveyed by an instrument in writing only. It was so decided in California as early as 1855. (*Hill v. Newman,* 5 Cal. 445, 63 Am. Dec. 140; *Lobdell v. Hall,* 3 Nev. 507; *Barkley v. Tiekele,* 2 Mont. 59.)

Hawley & Puckett, for Respondents.

Counsel for appellant say that the court cannot decree, in the absence of a statute conferring such powers, that a claimant who has established a priority shall make use of said right at certain seasons only. We urge that the courts not only have such power, but that it is their duty, to limit the use to certain seasons in certain cases. (*Eddy v. Simpson,* 3 Cal. 249, 58 Am. Dec. 408; *Nevada Water Co. v. Powell,* 34 Cal. 109, 91 Am. Dec. 685; *Ortman v. Dixon,* 13 Cal. 36; *Lobdell v. Simpson,* 2 Nev. 274, 90 Am. Dec. 537.) The rights of each appropriator are to be determined by the condition of things at the time he makes his appropriation. So far is this rule carried that those who were prior to him can in no way change in extent their use to his prejudice, but are limited to the right enjoyed by them when he secured his. (*Proctor v. Jennings,* 6 Nev. 87, 3 Am. Rep. 240. To the same effect are *Cole v. Logan,* 24 Or. 304, 33 Pac. 568; *Ramelli v. Irish,* 96 Cal. 214, 31 Pac. 41; *Gallaher v. Montecito V. W. Co.,* 101 Cal. 242, 35 Pac. 770; *McGuire v. Brown,* 106 Cal. 660, 39 Pac. 1060; *Roeder v. Stein,* 23 Nev. 92, 42 Pac. 867.) Can a water right be transferred by oral sale? A right which secures to the owner of a tract of land water for irrigating or other purposes necessary to the enjoyment of the land becomes appurtenant to said land and passes by a conveyance thereof. (*Cane v. Crafts,* 53 Cal. 135; *Farmer v. Ukiah Water Co.,* 56 Cal. 11; *Standart v. R. V. Water Co.,* 77 Cal. 399, 19 Pac. 689; *Cross v. Kitts,* 69 Cal. 217, 58 Am. Rep. 558, 10 Pac. 409.)

HUSTON, J.—This action was brought to settle the rights of the various parties thereto to the waters of Cold Spring creek, in the county of Elmore. The case was heard by the

court without a jury, and to the decree entered by the court the appellants take certain exceptions, and the same are brought to us by this appeal for review.

In its findings of fact, the court, after finding the date of the appropriation of water by the various parties, and the amount appropriated by them severally, proceeds to declare the amount to be used on each several tract, and the time when the same may be used, and it is to this action of the court that the first exception of the appellants goes. Counsel for appellants contend that when the court had found the fact of appropriation, and had fixed the question of priority and extent of appropriation between the various claimants, its powers ceased. Section 3155 of the Revised Statutes of Idaho is as follows: "The right to the use of running water flowing in a river, or stream, or down a canyon or ravine, may be acquired by appropriation." Section 3159 is as follows: "As between appropriators, the one first in time is the first in right." Section 3165: "All ditches, canals, and other works heretofore made, constructed or provided, by means of which the waters of any stream have been diverted and applied to any beneficial use, must be taken to have secured the right to the waters claimed, to the extent of the quantity which said works are capable of conducting, and not exceeding the quantity claimed, without regard to or compliance with the requirements of this chapter." These sections of the Revised Statutes have been several times passed upon and construed (if any construction was required) by this court. (See *Hillman v. Hardwick,* 3 Idaho, 255, 28 Pac. 438; *Geertson v. Barrack,* 3 Idaho, 344, 29 Pac. 42; *Kirk v. Bartholomew,* 3 Idaho, 367, 29 Pac. 40.) Priority of appropriation having been established, as well as the amount of the water appropriated, and the beneficial use thereof, it seems to us that the functions of the court under the statute have reached their limit. For the court to dictate the manner in which the appropriator shall use the water so appropriated, so long as it is adapted to a useful or beneficial purpose, is going beyond its province. It is an interference with the right conferred by the statute. We have examined the cases cited by counsel for respondents, but we are unable to see their applicability to the case at bar, or wherein they conflict with the rule heretofore laid down by this court.

The district court finds in its fourth finding of fact: "That lands upon which wild hay is raised, or which are irrigated for pasture only, do not require, in the vicinity of Cold Spring creek, water to be used thereon later than July 1st of each year." The only evidence we find in the record upon this subject is found in folio 276 of the record, and is as follows: "It has been the custom of the plaintiffs and of the other parties to this suit using water for irrigation from the stream to turn the water out upon the land as early in the spring of the year as the frost left the ground, and, with the exception of the intervals between irrigating periods, and while removing the crops from the land, continue the use of the water until the ground froze in the fall." We do not think this evidence supports the said fourth finding. We are of the opinion that, so long as the appropriator of water applies the same to a beneficial or useful purpose, he is the judge, within the limits of his appropriation, of the times when and the place where the same shall be used.

Upon the trial the defendant Stanfield was permitted, over the objection of the appellants, for the purpose of establishing priority of appropriation of the water of Cold Spring creek, to show the following facts: "That prior to May 1, 1869, Jacob Stover and Ely Montgomery settled upon the land afterward known as the 'Cold Spring ranch,' now owned by the defendant Stanfield, and made improvements thereon. In the spring of that year they constructed a ditch, and diverted from Cold Spring creek a quantity of water sufficient for the irrigation of these lands; the quantity actually used, needed, and required upon the land under cultivation and for hay being one hundred and thirty-six inches, measured under a four-inch pressure. Stover and Montgomery continued in possession of the land, using said amount of water in the cultivation thereof, until the spring of 1875, at which time they sold the improvements on the land to O. S. Glenn for the consideration of $2,000. No papers were executed, nor was any transfer or conveyance in writing made by Stover and Montgomery, or either of them, to Glenn, of the land, the improvements thereon, or the water rights appurtenant to or used with said land; neither was there any evidence of a transfer or conveyance in writing by Stover

and Montgomery, or either of them, to any grantor or predecessor in interest therein, or of the improvements thereon, or of the water rights appurtenant thereto." Appellants assign the action of the court in permitting said defendant, over the objection of plaintiffs, to establish title to the land and the water right appurtenant thereto by proof of an oral transfer, as error. Possessory titles to public lands have been defined by the statutes of Idaho as real estate since the organization of the territory, and the following provision, in substance, has been in the statutes of Idaho since the laws of the first session of the territorial legislature (section 6007) : "No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto can be created, granted, assigned, surrendered or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." Under the statutes we are unable to hold that title to real estate, or an interest in real estate, can be established by proof of a verbal transfer. The water right of the defendant Stanfield dates from the time when Glenn went into possession under his purchase from Stover and Montgomery, and commenced to use the water. Counsel for respondents cite several decisions in support of the contrary contention, but, as it does not appear that they were made under statutes similar to ours, we can hardly accept them as authority for abrogating our own statutes.

What we have here said applies as well to the proof offered by the defendant Ida McGinness in relation to her claim, to wit, a verbal transfer from Harvey Glenn. The deed subsequently procured by her from Glenn, some fourteen years after he had left the country, could only have effect from its date.

The judgment of the district court is reversed, and the cause remanded to the district court, with instructions to correct its findings of fact and modify its decree in accordance with the views herein expressed; the costs to appellants.

Sullivan, C. J., and Quarles, J., concur.

ON REHEARING.

(January 31, 1899.)

Per CURIAM.—The petition for rehearing filed by the respondents has been carefully considered. It concedes the correctness of the rule announced in the original opinion that the trial court erred in restricting the use of the water appropriated by the appellants during certain months, but insists that we erred in holding that an oral contract of sale of a possessory claim upon public lands is not admissible in evidence against a claimant whose right is anterior to such oral contract. Upon this point we are still satisfied of the correctness of our conclusion, which we cannot change without nullifying provisions in our statutes. No good cause appearing why, a rehearing should be granted, the same is hereby denied.